UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

```
*******************************************
In re:                                     *
                                           *
THOMAS E. JASPER                           *
    and                                    *
LORRAINE L. JASPER,                        *    Chapter 13
                                           *    Case No. 03-21155
    Debtors                                *
*******************************************
THOMAS & LORRAINE JASPER, Debtors          *
                                           *
    and                                    *
                                           *
PETER C. FESSENDEN, Trustee,               *    Adversary Proceeding
                                           *    No. 04-2013
    Plaintiffs                             *
                                           *
    v.                                     *
                                           *
BOWDOINHAM FEDERAL CREDIT                  *
UNION,                                     *
                                           *
    Defendant                              *
*******************************************
```

## MEMORANDUM OF DECISION

Plaintiffs Thomas and Lorraine Jasper, the debtors, and Peter Fessenden, the standing Chapter 13 Trustee, allege that the defendant, Bowdoinham Federal Credit Union ("BFCU"), violated § 525(a) and § 362(a) of the Bankruptcy Code,[1] when, after confirmation of the Jaspers' Chapter 13 plan and before entry of their discharge, it terminated their privileges as credit union

---

[1] Unless otherwise indicated, all statutory sections cited are those of the Bankruptcy Reform Act of 1976, as amended ("Bankruptcy Code" or "Code") 11 U.S.C. § 101 et seq.

members. Before me are cross motions for summary judgment.[2]

Because I conclude that termination of the Jaspers' credit union privileges does not constitute denial of a "license" within the meaning of § 525(a) or an appropriation of rights protected by § 362(a)'s automatic stay, summary judgment will enter for BFCU.

## BACKGROUND

The Jaspers' filed for relief under Chapter 13 on July 18, 2003. As of that date, they owned individual share accounts at BFCU, each in the amount of $25.00. They owed $17,766.65 to the credit union on a secured automobile loan.

On July 31, 2003, BFCU's directors adopted a policy authorizing the board to revoke membership privileges of any member who caused the credit union a loss of more than $25.00.[3]

The Jaspers' plan, confirmed on an interim basis in October 2003, bifurcated BFCU's claim into a secured claim of $2,430, and an unsecured claim of $15,336.65. Unsecured creditors are to receive a 5% dividend.[4]

---

[2] The plaintiffs in this case are both the Jaspers (debtors) and Fessenden (Trustee). Only Fessenden has moved for summary judgment. The debtors have taken a more passive role in this case.

[3] BFCU's "Service Termination Policy" states:

Once a member has created a loss for the Credit Union in the excess of $25.00, for any reason, we reserve the right to terminate Credit Union Services. These services include, but are not limited to, the use of a share or share draft account, check cashing privileges, ATM transactions, payroll deductions, online banking, and the opening of a new account will not be permitted until the deficiency has been rectified. There will be a 10 day notice of termination sent to the member. If it is a bankruptcy, it can be sent to the attorney.

[4] Assuming the Jaspers complete their plan, BFCU will be paid a dividend of $766.83 on its $15,336.65 unsecured claim. See Order Allowing & Disallowing Claims, doc. # 44, dated December 13, 2004.

On January 16, 2004, after charging off the Jaspers' loan, BFCU's attorney sent the Jaspers' attorney a letter, informing him that the Jaspers' membership privileges at the credit union had been "revoked for causing a loss to the Credit Union." The Jaspers were the first members whose privileges were terminated under the new policy, although others followed. BFCU enforces its Service Termination Policy without regard to bankruptcy. That is, the policy's enforcement is precipitated by causing a loss, not filing bankruptcy.

The complaint alleges that BFCU terminated the Jaspers' membership privileges because they were debtors under the Bankruptcy Code, in violation of § 525(a), and that the termination constituted an unpermitted exercise of control over estate property, namely, the Jaspers' interest in the rights and privileges of credit union membership.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Rosenberg v. City of Everett, 328 F.3d 12, 17 (1st Cir. 2003).

> The role of summary judgment is to look behind the facade erected by the pleadings and assay the parties' proof in order to determine whether a trial will serve any useful purpose. Conventional summary judgment practice requires the moving party to assert the absence of a genuine issue of material fact and then support that assertion by affidavits, admissions, or other materials of evidentiary quality. Once the movant has done its part, the burden shifts to the summary judgment target to demonstrate that a trialworthy issue exists. . . .
> In conducting this tamisage, the . . . court must scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor.

3

> This standard is notoriously liberal--but its liberality does not relieve the nonmovant of the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe. Moreover, the factual conflicts relied upon by the nonmovant must be both genuine and material. For this purpose, "genuine" means that the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party, and "material" means that the fact is one that might affect the outcome of the suit under the applicable law.

Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted).

## II. § 525(a)

Section 525(a) states, in relevant part, that:

> [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to . . . a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act . . . solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a).

A violation of § 525(a) is made out when "[f]irst, the prohibitive conduct must have been performed by a 'governmental unit.' Second, the governmental unit must have denied, revoked, suspended or refused to renew a license, permit, charter, franchise or other similar grant to the debtor. Third, the action must have been taken solely because the debtor filed for bankruptcy, was insolvent or failed to pay a debt that is subject to discharge in bankruptcy." In re Valentin, 309 B.R. 715, 720 (Bankr. E.D. Penn. 2004).

Because I conclude, as a matter of law, that BFCU's extension of credit union privileges

is not "a license, permit, charter, franchise or other similar grant to the debtor[s]," it is unnecessary for me to resolve which side, if any, might be entitled to judgment as a matter of law with respect to BFCU's status as a "governmental unit,"[5] or whether BFCU terminated the Jaspers' membership privileges "solely because" they filed for bankruptcy or failed to pay a debt dischargeable in bankruptcy.[6]

In attempting to fit BFCU's revocation of credit union privileges within the statutory framework, Fessenden argues that the common dictionary definition of "license" includes a grant of permission. He reasons that because BFCU offers its members permission to use its services and benefits, that permission is analogous to a "license," and thus covered by the anti-discrimination provisions of § 525(a). BFCU abjures Fessenden's logic, arguing that all grants of permission are not licenses, and, further, that its membership benefits do not fit at all comfortably within § 525(a)'s provisions.

---

[5] BFCU does not dispute that it is a "governmental unit" within the meaning of § 525(a). See 11 U.S.C. § 101(27); T I Federal Credit Union v. DelBonis, 72 F.3d 921, 930-38 (1st Cir. 1995) (holding that federal credit unions are "governmental units" within the meaning § 523(a)(8)). For this case, the aptness of DelBonis's holding is beside the point, but it is worth noting that the Court of Appeals specifically declined to "categorically" hold that federal credit unions are federal instrumentalities within the definition of "governmental unit" found in § 101(27). DelBonis, 72 F.3d at 931.

[6] Fessenden argues that, given the timing, the Service Termination Policy's adoption (several days after BFCU likely received notice of the Jaspers' bankruptcy filing), a strong inference arises that the policy, and its subsequent enforcement against the Jaspers, was prompted by their bankruptcy filing. BFCU counters that its policy is bankruptcy neutral: enforcement is predicated on loss, not a bankruptcy *per se*. Although I need not decide the point, it is likely answered by the Supreme Court's decision in Federal Communications Comm'n. v. Nextwave Personal Communications, Inc., 537 U.S. 293, 301-302 (2003), where the Court considered "irrelevant" the FCC's *motive* for revocation of certain licenses, holding instead that if the failure to pay a dischargeable debt (or the filing of bankruptcy) is the proximate cause of prohibited governmental action, the statute's terms are met.

5

Section 525(a) represents Congress's acceptance, codification, and expansion of the Supreme Court's ruling in Perez v. Campbell, 402 U.S. 637, 649-52 (1971). Perez held that a state statute that discriminated against debtors who failed to satisfy motor-vehicle related tort judgments, even if the judgments were discharged in bankruptcy, was invalid under the Supremacy Clause, as contrary to the fresh start principles of the Bankruptcy Act. Stoltz v. Brattleboro Housing Authority (In re Stoltz), 315 F.3d 80, 87 (2nd Cir. 2002); Watts v. Pennsylvania Housing Finance Co. (In re Watts), 876 F.2d 1090, 1093 (6th Cir. 1989); Rose v. Connecticut Housing Finance Authority (In re Rose), 23 B.R. 662, 665 (Bankr. D. Conn. 1982) (citing legislative history); see generally 4 Lawrence P. King, *Collier on Bankruptcy* ¶ 525.02, at 525-5 (15th ed. rev. 2004) ("In short, a governmental unit may not discriminate against a person in ways that will frustrate the fresh start policies of the Code."). It is universally recognized that the statutory enumeration of various proscribed forms of discrimination is not exhaustive, In re Watts, 876 F.2d at 1093-94, and there is some disagreement in the cases about § 525(a)'s reach. *Collier* ¶ 525.01. However, the fundamental nature of its contours is settled.

> The common qualities of the property interests protected under section 525(a), i.e., "license[s], charter[s], franchise[s], and other similar grants," are that these property interests are unobtainable from the private sector and essential to a debtor's fresh start. For instance, a real estate license, state university transcript, or driver's license may only be obtained from a particular governmental unit. A debtor who cannot obtain her real estate license will be unable to pursue her chosen profession; a debtor who cannot obtain his transcript will be unable to apply for certain jobs or further schooling; a debtor who cannot obtain a driver's license will be unable to commute to many jobs or school.

In re Stoltz, 315 F.3d at 90; see also Toth v. Michigan State Housing Development Authority, 136 F.3d 477, 480 (6th Cir. 1998) (ruling that extensions of credit do not come within the

section's reach, and that the "target of § 523(a) is government's role as a gatekeeper in determining who may pursue certain livelihoods"); In re Watts, 876 F.2d at 1093 (recognizing the "indicia of authority from a governmental unit to the authorized person to pursue some endeavor" as common in the enumerated items). Thus,

> [b]eyond the area of driver's licenses, debtors are protected from denial of continued occupancy in public housing based upon dischargeable debts for past rent, from denial of student transcripts based upon dischargeable tuition or student loan debts, from denial of participation as providers in the Medicaid or Medicare Program and from the denial of a contractor's license, a real estate license, a liquor license, a license to practice law, an insurance agent license and a casino license, if any such denial is based solely upon past or present nonpayment of a dischargeable debt. Similarly, a governmental unit cannot condition the granting of other privileges, such as the approval of permits, zoning or land use changes, upon payment of discharged debts.

*Collier,* ¶ 525.02[2] (citations omitted). See also 3 William A. Norton, Jr., *Bankruptcy Law and Practice 2d* §§ 50.1, 50.2 (1997 & Supp. 2004) (noting that withholding of governmental licenses, permits, franchises, etc., can be a powerful collection device; also noting that extension or guaranty of new credit is not required as part of § 524(a)'s protections).

It is beyond cavil that check cashing privileges, ATM transactions, online banking, minimum account balances, and the like are widely available. BFCU's revocation of those privileges hardly impairs the Jaspers' fresh start. There may be something to Fessenden's point that, absent a ruling in their favor, the Jaspers will pay slightly more for banking services, but it should come as no surprise that bankruptcy can bring on some adverse consequences. See Jamo v. Katahdin Federal Credit Union (In re Jamo), 283 F.3d 392, 400 (1st Cir. 2002) (recognizing that "a Chapter 7 discharge is not a walk in the park"); In re Watts, 876 F.2d at 1094 ("[T]he fresh start policy does not require [a governmental entity] to insulate a debtor from any and all

adverse consequences of a bankruptcy filing."). Whereas the class of activities protected under § 525(a) are limited to those that are peculiarly governmental functions, i.e., for which a citizen *must* resort to the government, the services offered by BFCU are generally available at credit unions and banks. They do not fall within § 525(a)'s ambit.

### III. § 362(a)(3)

The complaint also seeks damages and restoration of membership benefits for BFCU's alleged violation of several provisions of the automatic stay, § 362(a). Fessenden has abandoned all but § 362(a)(3) as grounds for relief. His argument goes like this: (1) the membership benefits terminated by BFCU are contractual, and thus constitute property of the estate; (2) by terminating those rights, BFCU exercised control over estate property; and (3) it did so without obtaining relief from stay from this court. BFCU counters that the only estate property it could control is the debtors' shares themselves. All concede that it has exercised no control over those shares.

At oral argument, Fessenden acknowledged that his § 362(a) argument is "weak." It depends entirely upon a finding that BFCU membership privileges are *property* of each BFCU member, as opposed to incidents of membership controlled in the credit union's discretion.

Fessenden has provided *no* evidence of any contractual relationship between BFCU and the Jaspers as to the privileges it has revoked. Even granting Fessenden the benefit of the doubt, as I must in considering BFCU's summary judgment motion, I can discern no disputed material issue touching on the question whether the relationship between these parties is that of contract.

Absent a contractual relationship, courts will not generally force parties to conduct business with particular debtors. <u>Brown v. Pennsylvania State Employees Credit Union</u>, 851

F.2d 81, 85 (3rd Cir. 1988) (affirming bankruptcy court's ruling that credit union did not violate automatic stay by informing debtor of its policy not to do business with debtor on account of debtor's discharged debt).

In the absence of any evidence of a contractual relationship, I conclude that BFCU's termination of the Jaspers' membership benefits did not violate the stay.  See also In re Henry, 129 B.R. 75, 78 (Bankr. E.D. Va. 1991) (credit union's policy of revoking membership benefits of members who caused credit union a loss does not violate automatic stay); cf. In re Bobbitt, 174 B.R. 548, 553-54 (inferring existence of contract between credit union and member that covered maintenance of accounts, despite inadequate evidence of such an agreement presented at trial, court nonetheless holds that credit union's "cancellation" of services constituted at most a breach of the inferred contract, for which relief from stay would not be required).

## **CONCLUSION**

For the reasons set forth above, summary judgment will enter for BFCU.


May 26, 2005                                              /s/ James B. Haines, Jr.
Date                                                              James B. Haines, Jr.
                                                                      U.S. Bankruptcy Judge